People v Johnson (2022 NY Slip Op 01942)





People v Johnson


2022 NY Slip Op 01942


Decided on March 18, 2022


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, AND BANNISTER, JJ.


1104 KA 15-01249

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
THOMAS JOHNSON, ALSO KNOWN AS THOMAS JOHNSON, III, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (DREW R. DUBRIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered July 16, 2015. The judgment convicted defendant upon a jury verdict of aggravated murder, attempted aggravated murder, assault in the second degree, criminal possession of a weapon in the second degree and criminal possession of a weapon in the third degree (two counts). 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, aggravated murder (Penal Law
§ 125.26 [1] [a] [i]; [b]) for intentionally killing a Rochester city police officer in the line of duty. Pretrial proceedings were conducted in County Court (Argento, J.), and the case was transferred to Supreme Court (Moran, J.) for trial. At trial, defendant asked Supreme Court to instruct the jury that, in order to secure a conviction for aggravated murder as charged in the indictment, the People were obligated to prove that the victim-officer was lawfully performing his official duties at the time of his murder. Supreme Court refused to give such an instruction; indeed, Supreme Court explicitly instructed the jury not to consider the lawfulness of the victim-officer's actions at the time of his murder. We now affirm.
Viewing the evidence in light of the elements of aggravated murder as charged to the jury (see People v Kancharla, 23 NY3d 294, 302-303 [2014]; People v Johnson, 10 NY3d 875, 878 [2008]; People v Romero, 7 NY3d 633, 644 n 2 [2006]), we conclude that the verdict convicting defendant of that crime is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Indeed, because Supreme Court did not submit the issue of lawfulness to the jury, the guilty verdict on the aggravated murder charge cannot, as a matter of law, be against the weight of the evidence on the ground that the People failed to establish that the victim-officer was lawfully performing his official duties at the time of his murder (see People v Manners, 196 AD3d 1125, 1126 [4th Dept 2021], lv denied 37 NY3d 1028 [2021]). We note parenthetically that, contrary to defendant's assumption, the proper remedy for a preserved instructional error is a new trial, not weight of the evidence review conducted by reference to the correct jury charge (see e.g. People v Downey, 158 AD3d 1198, 1198-1200 [4th Dept 2018]; People v Pritchard, 149 AD3d 1479, 1479-1480 [4th Dept 2017]).
Contrary to defendant's further contention, Supreme Court properly refused to instruct the jury that, in order to secure a conviction for aggravated murder as charged in the indictment, the People were required to prove that the victim-officer was lawfully performing his official duties at the time of his murder. The governing statute provides that a person commits aggravated murder by, inter alia, intentionally killing a police officer "engaged in the course of performing his or her official duties" (Penal Law § 125.26 [1] [a] [i]). There is no merit to defendant's [*2]contention that the term "official duties" in this context necessarily encompasses only official duties performed lawfully (see People v Glanda, 18 AD3d 956, 958 [3d Dept 2005], lv denied 6 NY3d 754 [2005], reconsideration denied 6 NY3d 848 [2006]). After all, official duties may be performed either lawfully or unlawfully (see generally Rivas-Villegas v Cortesluna, — US &mdash, 142 S Ct 4, 7-9 [2021]; Matter of Lemma v Nassau County Police Officer Indem. Bd., 31 NY3d 523, 528-532 [2018]), and the legislature did not confine the crime of aggravated murder under Penal Law § 125.26 (1) (a) (i) to the intentional killing of police officers lawfully performing official duties. By contrast, the legislature did include a "lawful" duty element in certain subdivisions of the crime of assault in the second degree (§ 120.05 [3], [3-a], [3-b], [3-c], [11-b], [11-c], [14]), and that "fact . . . demonstrates that defendant's reading [of section 125.26 (1) (a) (i)] is untenable because, if the [legislature] meant to [limit the scope of that provision to instances in which the murdered officer was lawfully performing official duties], it knew how to do so" (Xiang Fu He v Troon Mgt., Inc., 34 NY3d 167, 172 [2019]). Indeed, the Court of Appeals has "firmly held that the failure of the legislature to include a substantive, significant prescription in a statute is a strong indication that its exclusion was intended" (People v Finnegan, 85 NY2d 53, 58 [1995], rearg denied 85 NY2d 968 [1995], cert denied 516 US 919 [1995]; see Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce, 21 NY3d 55, 60-61 [2013]), and the courts "are not at liberty to second-guess the legislature's determination, or to disregard—or rewrite—its statutory text" (Matter of New York Civ. Liberties Union v New York City Police Dept., 32 NY3d 556, 567 [2018]; see McKinney's Cons Laws of NY, Book 1, Statutes § 240).
Defendant's proffered analogy between the "official duties" element of aggravated murder (Penal Law § 125.26 [1] [a] [i]) and the "official function" element of obstructing governmental administration in the second degree (§ 195.05) is inapt. The technical legality of an officer's actions has no bearing on a defendant's culpability for murdering that officer in the line of duty under Penal Law § 125.26 (1) (a) (i) (see generally Glanda, 18 AD3d at 958); conversely, the technical legality of police action bears directly on a defendant's culpability for obstructing such police action under section 195.05 (see People v Lupinacci, 191 AD2d 589, 589 [2d Dept 1993]). Moreover, in a prosecution for obstructing governmental administration, the subject police officer can testify to the legality and basis of the official functions allegedly obstructed; conversely, in a prosecution for aggravated murder, the subject police officer is dead and thus cannot testify about the legality and basis of his or her official duties at the time of the murder. We therefore decline to construe the "official duties" element of aggravated murder in lockstep with the "official function" element of obstructing governmental administration in the second degree (see generally People v McNamara, 78 NY2d 626, 630 [1991]; People v Neumann, 51 NY2d 658, 665 [1980]; McKinney's Cons Laws of NY, Book 1, Statutes § 236).
Defendant further contends that he was deprived of a fair trial due to judicial bias and partiality. Assuming, arguendo, that County Court should have immediately recused itself after attending the victim-officer's funeral, we nevertheless conclude that reversal on that basis is unwarranted for the following three reasons unique to this case (see generally CPL 470.05 [1]). First, County Court did not preside over the trial, and thus could not have influenced or affected its outcome in any way. Second, defendant does not assign error to any ruling that County Court made in this case, nor does defendant identify how County Court's participation inured to his detriment in any respect. Third, County Court's only significant substantive determination in this case—a suppression ruling that defendant does not challenge—was explicitly reconsidered, ratified, and adopted by Supreme Court before trial.
We have considered and rejected defendant's additional allegations of judicial bias and partiality. In light of our conclusions, defendant's remaining contentions are academic.
Entered: March 18, 2022
Ann Dillon Flynn
Clerk of the Court